Carpenter and Wilcox agt. West and Van Benthuysen.

<hr/>

5 How. 53–Concurred in, 5 How. 470, 47...

## SUPREME COURT.

CARPENTER & WILCOX agt, WEST & VAN BENTHUYSEN.

Impertinent and scandalous matter, struck out of a complaint on motion, with costs.

The practice in this respect is not changed in what would have been equity cases before the Code.

An adverse party may always consider himself aggrieved by a pleading which is scandalous or impertinent.

*It seems* impertinence includes irrelevancy, redundancy and even prolixity.

*It seems* any one affected thereby, may move to strike out scandalous matter, ven though not a party to the suit.

*Warren Special Term, August* 1850. This was a motion to strike out those parts of the complaint which purport to set out portions of two affidavits. And also another part in which the plaintiff Carpenter, " expressly charges and alleges that the said defendants (West & Van Benthuysen), some one or both of them, have been guilty of the crime of forgery, in crossing and obliterating the aforesaid endorsement made upon the aforesaid note with a pencil; and that the same was done to cheat and defraud the plaintiffs in this suit, and that the defendants have been guilty of other dishonest and fraudulent acts in obtaining the aforesaid judgment to injure and defraud the said plaintiffs."

The complaint stated that in May 1849, West recovered a judgment against the plaintiffs for $93·33, in a justice's court, upon the joint guaranty, as it was called, of Carpenter as principal and Wilcox as his surety, made in June 1846, to secure the payment of about $72, which was West's only claim against Carpenter. That in October 1846, C. paid West $30, to apply thereon and took a receipt; and in December 1846, $19 more and also took a receipt therefor; and about that time turned out

to said West a note against one Huling for $40·60; on which there was then due $20·60, besides interest. That $20 had been endorsed thereon by Carpenter with a pencil, and C. turned it out to said West subject to said endorsement, and for the balance then due thereon only, being about $20·60 principal. Plaintiffs alleged, under information and belief, that West sued the note and recovered judgment against Huling for the whole face of the note and interest, being about $43; and Huling paid this judgment to West or his attorney; and that when judgment was recovered there was no trace of the pencil endorsement, nor is there now. But Carpenter alleged. that when he let West have the note, he let him have it only for the balance, about $20·60, principal, and took a receipt to that effect. That including the whole of the note, West has received $92, or thereabouts, on account or the guaranty, and now seeks to enforce the judgment. That besides these payments, before the guaranty, the plaintiff turned out a wagon, harness and buffalo robes, in security. After the guaranty C. sold the wagon, with West's consent, to one Van Dosen, and took his note and turned it out to West; but he did not recollect the amount of the sale or of the note, nor whether paid; but is informed and believes that Van Dosen was good, and the note, he thinks, was payable in six months, and given in the summer of 1846. The harness and buffalo robes were left with West to be diposed of and the proceeds to be credited to C., but plaintiffs did not know what had become of them.

That Wilcox knew nothing of the judgment till March, and Carpenter in April last. That negotiations had been had to be let in to defend which had failed. West had assigned the judgment to Van Benthuysen and was insolvent and had left the county, and all the payments were made before the assignment. Wilcox only was served with process and appeared. Carpenter did not. The suit was on the guaranty and West and Carpenter both then lived out of the county. Wilcox's attorney with the consent of plaintiff's attorney, got it put off more than a year, he stating to the justice he understood C. had paid or arranged it in some way with West. Wilcox had no idea that

Carpenter and Wilcox agt. West and Van Benthuysen.

the suit before the justice would proceed, as they had an understanding with the attorney for West that he would not proceed without notice to the attorney of Wilcox. The complaint further stated that the plaintiffs had procured the affidavit of the justice, and this they incorporated in the complaint, in which the justice says the cause was adjourned definitely and indefinitely from time to time. The last adjournment was by consent from the 2d to 14th May 1849, and that the attorney of Wilcox, at the last adjourned day, did not appear, and the justice desired West's attorney to have it adjourned again, which he declined, but said he would take a judgment and open it if Wilcox's attorney desired, or it might be opened for an appeal. The affidavit of Wilcox's attorney (before the justice) was also inserted in the complaint. He stated that the first he knew of the judgment was in March 1850, and then West's attorney told him he should let them put in a defence if they had any, or appeal, but afterwards refused to do so.

Carpenter alleged that all of said guaranty had been paid. That when West received the Huling note, it was understood that when paid, that paid the balance due on the guaranty.

The complaint then charged forgery and dishonest and fraudulent acts as already stated, and prayed for relief against the judgment.

C. S. Lester, *for the Motion.*

W. L. Avery, *Contra.*

Hand, Justice.—"If irrelevant or redundant matter be inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby" (*Code*, § 160). If this clause does not include scandalous and impertinent matter, it contains no prohibition, and they may still be struck out of a pleading. The old practice in this respect yet exists (*Code*, 469; *Rule* 92). It would be monstrous if there were no mode of purifying the record by expunging scandalous matter. It can not be done by demurrer (1 *Dan. Practice*, 401; *Code*, § 144). By "irrelevant or redundant" in the Code, I take it is meant, what is usually understood as impertinent; for a pleading in equity is impertinent,

when it is stuffed with long recitals, or long digressions, which are altogether unnecessary and totally immaterial to the matter in hand (*Hoff. Master* 317; 1 *Dan. Pr.* 399; 1 *Barb. Pr.* 41; Woods v. Morrell, 1 *J. C. R.* 106; *Story Eq. Pl.* § 266). It is like surplusage at law. According to Webster, *redundant* means superfluous, more than is necessary, superabundant; and *irrelevant*, not applicable or pertinent, not serving to support. Both, therefore, may probably come under the head of impertinent. Prolixity may become redundance, and Lord Eldon held, that needless prolixity was in itself impertinence (See the cases 1 *Dan. Pr.* 400).

It has been thought irrelevant and redundant matter should not be struck out unless a party is aggrieved or prejudiced thereby (White v. Kidd, 4 *How. Pr. R.*, 68; Hynds v. Griswold, *id.* 69). With deference, I doubt that this is so to the fullest extent. As to scandalous matter, it is not clear that a person not a party to the record may not move to strike it out (Coffin v. Cooper, 6 *Ves.* 514; Williams v. Douglass, 5 *Bear.* 82; ex parte Simpson, 15 *Ves.* 477; 5 *id.* 656, *note*). And the court, it seems, will do it without application of any one (Ex parte Simpson, *supra*). And impertinence in an answer was always exceptionable. My own impressions are, that as to scandalous and impertinent, irrelevant and redundant matter, the Code has not in any respect changed the former practice in equity cases (see Shaw vs. Jayne, 4 *How. Pr. R.* 119; Knowles vs. Gee, *id.* 317). Its effect on what, before the Code, would have been cases at law, is not now under consideration. If this view is correct, the adverse party may always be considered aggrieved by scandalous, irrelevant, impertinent and redundant matter in a pleading. I think one may be considered aggrieved by the interpolation of matter into the pleadings in a cause, in which he is party, foreign to the case; and he always had a right to have the record expurgated for that reason without reference to the question of costs. If relevant, it can not be scandalous (Ld. St. John v. Lady St. John, 11 *Ves.* 526; *Stor. Pl.* 269). And a few unnecessary words will not make a pleading impertinent (Del Pont v. De Tastel, 1

Carpenter and Wilcox agt. West and Van Benthuysen.

*Tur. & Russ.* 486; Des Places v. Goris, 1 *Edw. & C. R.* 350). And courts should be liberal, especially until our novel system of pleading shall have become better settled and understood. Every fact, direct or collateral, tending to sustain the general allegations of the bill, may be inserted, if done in a proper manner (Hawley vs. Wolverton, 5 *Paige*, 522; Perry vs. Perry, 1 *Barb. C. R.* 519). And in Delpont v. De Tastel (*supra*), which, however, goes to the extent of the rule, extracts from letters of the defendant were permitted for the purpose of eliciting answers as to those letters.

But the principal case is very different. Here, portions of two affidavits, probably extrajudicial, by persons not parties to the suit, are inserted, neither of which amount to more than the mere statements of third persons, and are in no sense papers or transactions between the parties, and can not be given in evidence, nor their existence or validity be put in issue between them. Chancellor Kent thought the best test by which to ascertain whether the matter be impertinent is, to try whether the subject of the allegation could be put in issue and would be matter proper to be given in evidence between the parties (Woods v. Morrell, 1 *J. C. R.* 106). The plaintiff might as well have inserted a letter from his own attorney, giving his recollection of the history of the case.

The allegation that one or both of the defendants were guilty of forgery, and also the allegations of fraudulent and dishonest acts in obtaining the judgment, without specifying what those acts were, are still more exceptionable. The complaint alleges that when the plaintiff Carpenter, transferred the note against Huling to West, there was upon it an indorsement in pencil of $20; that, as he is informed and believes, West obtained judgment against Huling for the whole amount, without deducting the $20, and is also informed and believes that there was no trace of this indorsement on it at that time, and that Huling has paid the judgment; and that it was understood that when Huling paid what was due, deducting the indorsement, that completed the payment of Carpenter's debt to West. If Carpenter sold the note

8·

for a certain sum, as he alleges, and West afterwards recovered the whole amount, that seems to be a matter between him and Huling the payor. No liability of Carpenter therefor is suggested. This then is irrelevant. But the plaintiff Carpenter goes further, and expressly alleges and charges that West and Van Benthuysen " some one or both of them, have been guilty of the crime of forgery in crossing or obliterating " the endorsement, and that it was done to cheat and defraud the plaintiffs. As to Van Benthuysen, this seems to be the only connection he has had with the note; for it does not appear that he ever heard of it before. As to West, the charge, if true, is wholly irrelevant, and not issuable in this cause, and bears cruelly upon his moral character, and is therefore scandalous; more so I think than in case of Simpson *ex parte* (*supra*), and Somers v. Torrey (5 *Paige*, 54), where the matter was expunged with evident marks of reprobation. The general charge of their dishonest and fraudulent acts to obtaining the judment, is also not issuable and is scandalous.

The motion must be granted with costs.

5 How. 58–Affirmed, 17 Barb. 103.